IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JOHN D. SYMONDS,

    Plaintiff,

v.                                                       CASE NO. 1:05-cv-0058-MP-AK

MICHAEL J. ASTRUE,

    Defendant.

_____/

## **O R D E R**

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) finding that Plaintiff was disabled as of July 11, 2006, but denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and for supplemental security income benefits (SSI) filed under Title XVI of the Act prior to that date.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence and the decision of the Commissioner is affirmed.

**A.**    **PROCEDURAL HISTORY**

Plaintiff concedes that the ALJ accurately summarized the procedural history of this case in the partially favorable decision issued March 10, 2008. Plaintiff initially filed applications for benefits on August 6, 2001, alleging a disability onset date of May 26, 2001, due to lower back pain. The claims were denied initially and on reconsideration, and hearings were held before an Administrative Law Judge (ALJ) in December 2003 and January 2004. The ALJ issued an

unfavorable decision on February 12, 2004, and the Appeals Council denied review. This action followed. On October 5, 2005, the Court remanded the case on the Commissioner's motion because the hearing tapes were inaudible and a transcript could not be prepared. The Appeals Council remanded the case for a new hearing, including a hearing on a subsequent application that had been filed. A hearing was held before an ALJ on May 2, 2006, and on July 21, 2006, the ALJ entered a unfavorable decision. On May 23, 2007, the Appeals Counsel remanded the case to the ALJ for further consideration in light of subsequent claims. One of Plaintiff's subsequent claims for SSI, filed on December 18, 2006, was denied because Plaintiff had received a workers compensation settlement that exceeded the resource limitation on SSI benefits. All applications filed by Plaintiff, with the exception of that one, were consolidated for decision. The ALJ held another hearing on October 23, 2007, and then issued a partially favorable decision finding that Plaintiff was not entitled to DIB because he only met the insured status requirements through June 30, 2005, and he was not disabled on or before that date. The ALJ found that Plaintiff became disabled on July 11, 2006, and was therefore eligible for SSI as of that date. The Appeals Counsel denied review of the ALJ's partially favorable decision, and the case then returned to this Court. R. 238.

**B.     FINDINGS OF THE ALJ**

Plaintiff's initial claim for disability stemmed from a work-related back injury that occurred on May 26, 2001. The ALJ found that the Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. The ALJ found that Plaintiff is severely impaired by lumbar spondylolysis with chronic back pain, but does not have an impairment or combination of impairments that meets or medically equals the listings. The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary physical exertion

prior to July 11, 2006, including lifting, carrying, pushing, and pulling 10 pounds occasionally, standing and walking for an hour at a time for about 4 hours a day, and sitting for about six hours a day with normal breaks. Plaintiff had no postural limitations or environmental restrictions prior to that date. Because Plaintiff had additional limitations, the ALJ elicited testimony from a Vocational Expert (VE), who testified that given Plaintiff's RFC and additional limitations, there were significant numbers of jobs in the national economy that Plaintiff could perform. However, the ALJ found that since July 11, 2006, when Plaintiff was involved in a car accident, Plaintiff has been unable to perform the full range of sedentary physical exertion, and has been unable to perform work-related activities on a regular and sustained basis at any level of exertion.

In making these findings, the ALJ considered the objective medical evidence as well as Plaintiff's subjective complaints of pain. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged by Plaintiff, but that Plaintiff's statements regarding the intensity and limiting effects of his symptoms prior to July 11, 2006, were not entirely credible. The ALJ based his credibility determination on Plaintiff's testimony that showed he was capable of performing sedentary physical exertion prior to July 11, 2006. R. 242-47.

## C. ISSUES PRESENTED

Plaintiff makes three claims of error in the ALJ's findings. First, Plaintiff contends that the ALJ's finding that Plaintiff only became disabled on July 11, 2006, is arbitrary, capricious, and unsupported by substantial evidence. More specifically, Plaintiff argues that the medical evidence pertaining to Plaintiff's back surgery in October 2001, and the medical report of Dr.

Jessie A. Lipnick in December 2002, support a determination that the Plaintiff was disabled from 2002 forward. In his second, related, point of error, Plaintiff asserts that the ALJ erred in giving no weight to Dr. Lipnick's opinion. As his third claim of error, Plaintiff contends that the ALJ improperly discredited his subjective complaints of pain.

The government responds that there is substantial evidence for the ALJ's finding that Plaintiff was not disabled before July 11, 2006; that there is no finding in the record by the Division of Worker's Compensation that Plaintiff was permanently and totally disabled, only the opinion of a treating physician, Dr. Lipnick; and that the record supports the ALJ's evaluation of Plaintiff's credibility.

The issue thus presented is whether the Commissioner's decision that Claimant was not disabled before July 11, 2006, is supported by substantial evidence in the record and decided by proper legal standards.

**D.   STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court. The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam). It is more than a scintilla, but less than a preponderance. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations

omitted). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996). It must determine only if substantial evidence supports the findings of the Commissioner. See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?
2. Does the individual have any severe impairment?
3. Does the individual have any severe impairments that meet or equal those listed

in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.  RELEVANT MEDICAL HISTORY**

Plaintiff's claims of error in the ALJ's evaluation of the medical evidence focus solely on the ALJ's rejection of Dr. Lipnick's opinion. In October 2001, Plaintiff underwent surgery for degenerative instability of L5-S1. The surgery consisted of posterolateral fusion of L5-S1, posterior segmental instrumentation of L5-S1, and right autogenous bone graft harvest. R. 383-84. Dr. Lipnick first evaluated Plaintiff for back pain in January 2002. Plaintiff complained of pain that was dull, sharp, burning, toothache-like, stabbing, pressure-like, and throbbing; the pain also referred to his right leg. Plaintiff stated that nothing made the pain better, and the pain

worsened upon sitting, standing, walking, driving, lifting, laying down, bending, twisting, and coughing. Dr. Lipnick ordered diagnostic tests (MRI, x-rays; electrodiagnostic studies). Dr. Lipnick noted that Plaintiff had some self care and mobility issues. He prescribed pain and other medications, and Plaintiff executed a pain contract. R. 406-09. Plaintiff saw Dr. Lipnick for several follow-up visits.

In December 2002, at the behest of the lawyers representing Plaintiff in his workers' compensation case, Dr. Lipnick completed a "Medical Report Form" stating that Plaintiff had reached maximum medical improvement (MMI) in November 2002, and that he was "temporarily totally disabled from the date of the [2001 work-related] accident until present." The form states that Plaintiff had a 28% permanent physical impairment to his whole body, pursuant to the 1996 Florida Uniform Permanent Impairment Rating Schedule. Dr. Lipnick opined that Plaintiff was limited from bending, squatting, lifting more than 10 pounds, standing for more than 60 minutes, must be able to make position changes as needed, and no repetitious use of legs for operating controls. Dr. Lipnick checked on the form that Plaintiff "cannot work." However, he indicated that he recommended education and retraining. R. 397.

Dr. Lipnick last saw Plaintiff on December 18, 2003. At that time, Plaintiff was reportedly taking prescription Valium, Soma, and OxyContin. Dr. Lipnick reported that Plaintiff had "moderate pain behavior." Dr. Lipnick continued Plaintiff on OxyContin, Soma, and Valium. However, on December 23, 2003, Dr. Lipnick sent Plaintiff a letter informing him that he would no longer provide him with medical care because a urine toxicology screen performed during Plaintiff's December 18, 2003, visit was positive for cocaine and cannabis, but negative for Oxycodone, in violation of Plaintiff's pain contract. Dr. Lipnick advised that he could no

longer prescribe narcotics for Plaintiff, and that Plaintiff should seek treatment from a new physician.  R. 387-404.

The ALJ's evaluation of the medical evidence included the following.  Plaintiff saw Dr. Edward Valenstein in October 2004 for neurological evaluation.  Dr. Valenstein noted that Plaintiff had limitation of straight leg raising on the right, but had more facial grimacing than guarding.  Motor examination and strength were normal, but Plaintiff complained of pain on almost every movement of his right leg.  Neurological examination was essentially normal.  Imaging studies did not show a clear reason for Plaintiff's symptoms.  Neurological examination showed mostly pain related behaviors without evidence of neurological deficits.  Dr. Valenstein determined that further studies were not indicated.  R. 426-28.

Dr. Youssef W. Wassef saw Plaintiff twice for consultation in November 2004.  At his first examination on November 5, Dr. Wassef found that Plaintiff had normal range of motion and strength in his upper extremities.  Plaintiff had decreased sensation in his right lower leg, and significant tenderness over his right lower back over the facets.  Dr. Wassef's diagnostic impression was lower back pain with what appeared to be radiculopathy in the right leg status post L5-S1 fusion.  Dr. Wassef prescribed Lortab, and Plaintiff executed a pain contract.  Dr. Wassef scheduled Plaintiff for EMG/NCS.  R. 473-75.  In the report of Plaintiff's follow-up visit on November 30, Dr. Wassef noted that Plaintiff's drug screen was positive for cocaine and cannabis, and Dr. Wassef advised Plaintiff that he would not prescribe narcotics.  Dr. Wassef's diagnostic impression was "1. Questionable  chronic L5-S1 radiculopathy.  The only finding is mild delay of the distal latency in the right for the H-reflex and the F-wave in comparison to the left.  F-wave and H-reflex on the right; EMG studies showed no abnormalities of the right leg.

2. Possible back pain, secondary to facet arthropathy." Dr. Wassef ordered an x-ray of the lumbar spine and another drug screen. R. 470-72.

Dr. Matthew Burry examined Plaintiff at UF/Shands in March 2005. Musculoskeletal examination revealed that Plaintiff had normal gait, and 5/5 muscle strength and normal muscle tone in all 4 limbs. Plaintiff had full range of motion in arms and legs, and normal cervical and lumbar range of motion. Neurological examination revealed decreased sensation upon light touch and pinprick in a stocking-like distribution below the knee on the right leg. Dr. Burry's assessment was as follows: "Although I feel that his symptoms might be exaggerated or not terribly physiologic, because of the EMG data and his complaints of numbness down the right leg, I feel that a CT myelogram is warranted . . . [t]he fact that he complains of a stocking like numbness in the right leg makes it very unlikely that surgery would be an option." R 424-25.

Dr. John Colon saw Plaintiff in July and August 2005. Dr. Colon completed a Medical Verification Form reflecting a diagnosis of "low back pain." The form reflects that Plaintiff's condition permitted work with the following restrictions: no lifting more than 10 pounds, no climbing, no pushing or pulling, with such limitations expected to last for 6 months. R. 482. In January 2006, Dr. Colon completed another form reflecting that Plaintiff was unable to work "pending further evaluation," but no findings or studies were cited in this opinion.

F. **SUMMARY OF THE ADMINISTRATIVE HEARING**

The ALJ stated that at the initial hearings in 2003 and 2004, Plaintiff testified that he did not have any problems with driving. He testified to having constant low back pain ranging from five to seven, and occasionally nine, on a scale of one to ten. He testified that he could sit for 20 to 45 minutes, and then would need to walk around for five minutes, and then could sit for

another 20 to 45 minutes. He could alternate standing and walking for about three to four hours. He could not bend, but could stoop and/or squat, but had trouble standing up. H testified that he could lift 10 pounds frequently, provided he did not have to bend over. He had difficulty climbing stairs. He stated that the workers' compensation doctor thought he could sit 45 minutes, then stand or move around, and that standing and walking was okay. His activities included household chores such as vacuuming and helping with the children, and grocery shopping. R. 246.[1]

At the May 2006 hearing, Plaintiff testified that he had a learning disability, and attended special classes through high school. Following his accident, he has experienced constant pain in his lower back, muscle spasms, and pain radiating down his right leg. He rated his daily pain as a seven or eight. He said that his leg is "basically numb all the time," but that he would rate the pain in the leg as an eight or a nine. He stated that he can sit for no more than 20 minutes at a time, and stand for no more than 40 minutes because his back starts to hurt. He feels relief lying flat on his back. He can walk 40 or 50 yards without a cane. Plaintiff testified that he takes Percocet for pain. He testified that he believes that his radiculopathy will progress to a point where he will eventually be dragging his leg because the muscles are not strong enough for him to walk a lot. He testified that he suffers from panic attacks, for which he takes Vistaril. His panic attacks stem from the fact that he can't work or do things that he used to do. His daily activities were confined to watching television, using his TENS unit, and taking his medications. He testified that he could not socialize. He has not sought any vocational rehabilitation or

---

[1] These hearings were not transcribed because the tapes were inaudible, but the Plaintiff does not challenge the ALJ's findings based on these hearings.

retraining. R. 518-40.

At the October 2007 hearing, Plaintiff testified that following his surgery he took OxyContin, Soma, Valium, and Percocet, but that he was no longer taking those medications due to lack of insurance. He testified that he spent most of the day sleeping, and could sit for about 30 minutes and stand for about 15. He had problems focusing, reading, spelling, and completing tasks, and had a reading disability.

The ALJ posed three hypotheticals to the VE, the second of which assumed a younger individual, with a 12th grade special education diploma, restricted to sedentary work, with an adjustment disorder, personality disorder, insomnia, and anxiety, with a global assessment of functioning (GAF) of 60-65 (moderate restrictions).[2] The VE testified that there are significant numbers of jobs in the national economy which such an individual could perform, including order clerk in the food and beverage industry and fishing reel assembler.

## G. DISCUSSION

Plaintiff contends that the ALJ failed to accord Dr. Lipnick's opinion the "great weight" to which he says it is entitled. "'The findings of disability by another agency, although not binding on the Secretary, are entitled to great weight.'" Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984) (referring to disability determination made by the Deputy Commissioner of the Division of Worker's Compensation) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1241 (11th Cir. 1983)). However, as the Government points out, Dr. Lipnick's opinion is just that: the opinion of a treating physician rendered at the behest of Plaintiff's workers' compensation

---

[2] The extent of Plaintiff's limitations due to mental health issues are not at issue in this case.

counsel. It is not an agency's disability determination.

Plaintiff's subsidiary claim that the ALJ violated the treating physician rule by ignoring Dr. Lipnick's opinion is contrary to the record. The record does not reflect that the ALJ explicitly rejected Dr. Lipnick's opinion. Dr. Lipnick opined in December 2002 that Plaintiff was "*temporarily* totally disabled from the date of the [2001 work-related] accident until present." R. 397 (emphasis added). Dr. Lipnick's opinion that Plaintiff was limited from bending, squatting, lifting more than 10 pounds, standing for more than 60 minutes, with the ability to make position changes as needed, and with no repetitious use of legs for operating controls, is consistent with the ALJ's conclusion that Plaintiff had the RFC to perform sedentary physical exertion prior to July 11, 2006.

Further, Dr. Lipnick's opinion that Plaintiff "cannot work" is entitled to controlling weight only if it is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2). The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when, *inter alia*, the evidence "supported a contrary finding." See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)). The ALJ pointed to the findings reported by *all* of plaintiff's treating and attending physicians, including several subsequent to December 2003, when Dr. Lipnick declined to provide further treatment for Plaintiff due to his noncompliance with his pain contract. The findings of those physicians, as outlined above, supports the ALJ's findings as to the severity of Plaintiff's impairment.

Plaintiff's final claim pertains to the ALJ's discrediting of Plaintiff's subjective

complaints of pain. Specifically, Plaintiff argues that the ALJ did not provide explicit or adequate reasons for discrediting Plaintiff's statements regarding his pain prior to July 11, 2006. The ALJ determined that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of his symptoms were not entirely credible. The ALJ based this finding on Plaintiff's testimony that showed he was capable of performing sedentary physical exertion. R. 246.

The ALJ has "wide latitude" in evaluating the weight of evidence, particularly the credibility of witnesses. Owens v. Heckler, 748 F.2d 1511, 1514 (11th Cir. 1984). An ALJ may properly find subjective complaints not credible so long as she articulates reasons that are supported by the record. Jones v. Department of HHS, 941 F.2d 1529 (11th Cir. 1991). In the instant case, it is appropriate to afford wide latitude to the ALJ's credibility determination because the ALJ had the opportunity to personally evaluate Plaintiff's credibility at multiple hearings over the course of several years. Further, Plaintiff's testimony, as summarized by the ALJ in his decision, supports the ALJ's conclusion. As the ALJ noted, Plaintiff testified to being able to drive, to sit for up to 45 minutes at a time, to lift up to 10 pounds, and to alternate standing and walking for three to four hours. Plaintiff performed household chores including vacuuming and helping with the children. He went grocery shopping, and pushed the cart when it had a light load. R. 246.

A clearly articulated credibility finding with substantial supporting evidence in the record should not be disturbed by a reviewing court. Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986). The Court concludes that

there is no basis for disturbing the ALJ's credibility finding in this case.

Accordingly, it is

**ORDERED AND ADJUDGED:**

That the decision of the Commissioner denying benefits before July 11, 2006, is AFFIRMED.

**DONE AND ORDERED** this  *5th*  day of April, 2010

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge